718 So.2d 276 (1998)
GENERAL MOTORS ACCEPTANCE CORPORATION, Appellant,
v.
Ronald LAESSER and Ed Morse Operations, Inc., a Florida Corporation, Appellees.
No. 97-2395.
District Court of Appeal of Florida, Fourth District.
September 9, 1998.
Rehearing Denied October 29, 1998.
Douglas R. Brown and Hayden R. Dempsey of Rumberger, Kirk & Caldwell, Orlando, for appellant.
Sharon C. Greenberg and Diane H. Tutt of Diane H. Tutt, P.A., Plantation, for Appellee-Ronald Laesser.
*277 WILLIAM C. OWEN, Jr., Senior Judge.
General Motors Acceptance Corporation ("GMAC") appeals a judgment against it and a Cadillac automobile dealership ("Morse") entered on a jury verdict which found GMAC and Morse had violated the Florida Deceptive and Unfair Trade Practices Act, and which awarded appellee damages. We reverse the judgment against GMAC.
Appellee went to Morse to purchase a new car. After he had selected the vehicle he wanted, and had agreed with the sales person upon a price for the new car and the amount of trade-in allowance on appellee's 1988 BMW, he wrote his check for the $27,000 difference. At that point appellee, with his contract and check in hand, was sent to the Morse business manager. The latter examined the purchase contract, told appellee there was a cheaper way for him to own the car and, with a few deft manipulations of the calculator, quickly convinced appellee that leasing rather than purchasing the new car would be to his financial advantage.[1]
Appellee kept the automobile for the entire thirty-six months of the lease term. During that time he experienced a number of problems with the vehicle most of which, if not all, were rectified by Morse. At the expiration of the lease term, he returned the vehicle and then filed this suit against Morse, General Motors Corporation and GMAC. Although the complaint was in eight counts, only three counts went to the jury: (1) a Florida Lemon Law claim against General Motors, (2) a Florida Deceptive and Unfair Trade Practices claim against Morse and GMAC with regard to the lease, and (3) a fraud claim against Morse and GMAC. The jury found for appellee only on the Florida Deceptive and Unfair Trade Practices Act claim. Appellee was awarded $30,000 in damages against Morse and $25,000 in damages against GMAC. Morse did not appeal and has satisfied the judgment against it.
Appellant contends, and we agree, that it was error for the court to deny its motion for directed verdict because the evidence does not support a finding of any wrongful act on its part that was a cause of loss or damage to appellee. Appellee did not assert that GMAC had vicarious liability for Morse's deceptive conduct. Rather, it was appellee's theory that GMAC was liable because it and Morse were both participants in a scheme to unfairly enhance their profits by switching prospective vehicle purchasers from a purchase agreement to a lease under the false and deceptive claim that it is cheaper to lease a vehicle than to buy it. In support of that theory of liability, appellee offered evidence that GMAC conducted training seminars for auto dealership employees at which the attendees were taught (1) the "bait and switch" procedure used on appellee, and (2) that by using a lease agreement they could omit certain disclosures required in a finance contract and thereby deceive customers about the overall price of the vehicle, thus enhancing profits.[2] Without question, such conduct is reprehensible and is immoral, unethical, unscrupulous and substantially injurious to consumers. It would certainly qualify as an unfair or deceptive act in the conduct of any trade. See Cummings v. Warren Henry Motors, 648 So.2d 1230 (Fla. 4th DCA 1995).
However, to be actionable an unfair or deceptive trade practice must be the cause of loss or damage to a consumer. The problem in this case is there was not presented to the jury any competent evidence that the *278 wrongful deceptive conduct of the Morse employees in switching appellee from a sale to a lease was in any-wise connected with or caused by the deceptive technique taught in the GMAC seminar,[3] nor any evidence from which the jury could reasonably infer that GMAC and Morse had schemed to produce such a result.
Our holding makes it unnecessary to discuss other issues raised. However, we take this opportunity to discuss by way of dicta the issue concerning the damages awarded, i.e., the $25,000 awarded against GMAC and the $30,000 awarded against Ed Morse ($55,000 total), which exceeded Laesser's actual damages by some ten-fold or more.
Florida Statutes Section 501.211(2) provides that a consumer who has been damaged as a result of a violation of the Florida Deceptive and Unfair Trade Practices Act may recover actual damages plus attorney's fees and court costs. The measure of "actual damages" recoverable under the statute has been defined generally as "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." Urling v. Helms Exterminators, Inc., 468 So.2d 451, 454 (Fla. 1st DCA 1985).
Appellee's interest was in acquiring the car he had selected. He had agreed to purchase it outright by trade-in of his BMW and a lump sum payment of $27,000 cash. He was persuaded by the deceptive representations of the Morse employee that there was a cheaper way to own the car, i.e., lease it for 36 months by trading his BMW, making monthly payments, and then buying the car at the end of the lease.[4] The deceptive conduct for which damages were awarded was not the negotiated sales price, but the switching of appellee from an outright purchase to a lease-purchase under the guise of a financial benefit to appellee. Therefore, the measure of his actual damages is the difference, if any, between his cost to acquire the car by outright purchase and his cost to acquire the car by lease-purchase.[5] To acquire by purchase outright required trade-in of appellee's BMW and $27,000 in cash. To acquire by lease-purchase required trade-in of appellee's BMW and $34,195[6] in installments. Thus, his actual damages caused by the bait and switch were approximately $7,195 less the benefit to appellee for being able to pay in installments over a period of time.[7]
REVERSED.
STONE, C.J., concurs.
GROSS, J., concurs specially with opinion.
*279 GROSS, Judge, concurring specially.
I concur with the result reached by the majority.
The theory under which the plaintiff sought to hold GMAC liable under the deceptive and unfair trade practices count was not properly pled, so it was not properly placed in issue at the trial. The specific acts described in count VI of the second amended complaint were the acts of the dealership which directly dealt with the consumer. Nothing in the count suggests the theory upon which the plaintiff sought to hang GMAC's liabilitythat GMAC was implicated in the dealer's conduct by conducting a training school where salespersons from dealerships were taught methods of switching consumers to leases using techniques violative of the Little FTC Act. Section 501.204(1), Florida Statutes (1997), uses generic terms, such as "unfair," "unconscionable," and "deceptive," to describe unlawful conduct. Florida Rule of Civil Procedure 1.110(b) requires that a cause of action be pled with a "short and plain statement of the ultimate facts showing that the pleader is entitled to relief." Proper pleading of a statutory cause of action similar to fraud requires specific identification of the wrongful acts alleged. See Fla.R.Civ.P. 1.120(b). Condoning imprecise pleading opens the door to the types of last minute problems that arose in this case.
GMAC's non-liability under the deceptive and unfair trade practices count was clinched by the joint pretrial stipulation filed the month before trial. The pretrial stipulation identified the issues for determination at trial as:
1. Whether General Motors violated the Florida Lemon Law Act (Chapter 681).
2. Whether the vehicle leased by the plaintiff was subject to an implied warranty and if that warranty was breached by the defendants.
3. Whether Morse Operations, Inc. committed deceptive trade practice.

4. Whether Morse Operations, Inc. and/or GMAC violated the Federal Consumer Leasing Act.
5. Whether Morse Operations, Inc. committed fraud and deceit in its dealings with the plaintiff.
(Emphasis supplied). The pretrial stipulation was filed pursuant to an order which required the parties to narrow and identify the issues for trial. The stipulation's failure to include GMAC as a party to the deceptive trade practice count unambiguously eliminated GMAC as a party on that count. At the very least, the state of the pleadings and the stipulation justified some liberality in ruling on GMAC's request to add witnesses to meet the plaintiff's evidence concerning the leasing school, which surfaced so late in the case, and so soon before trial.
I find no abuse of discretion in permitting the testimony of witness David Stivers under Binger v. King Pest Control, 401 So.2d 1310, 1314 (Fla.1981). Stivers' testimony about statements made by GMAC employee Pudge Donato were exceptions to the hearsay rule under section 90.803(18), Florida Statutes (1997). However, Stivers' handwritten notes made at the time Donato made the statements should not have been admitted into evidence. Even if the notes qualified as recorded recollection, Section 90.903(5), Florida Statutes (1997), allows only that such evidence be read into evidence, unless offered by the adverse party.
Having admitted the plaintiff's late disclosed evidence concerning the leasing school, the trial court clearly abused its discretion when it denied GMAC the ability to call the very person whose words were used against GMAC. Stivers' notes on the GMAC Lease Management School Training Manuel stated, "Pudge Donato says to increase gross: Do not list trade-in auto on the GMAC lease. Retain trade equity as additional profit." These notes supported Stivers' testimony about the tactics taught at the school. At the very least, GMAC should have been permitted to call Pudge Donato to present its side of the story. Contrary to appellee's claim on appeal, the record does not reflect that the trial court considered any of the factors specified in Binger to guide the exercise of its discretion; the trial court's decision appears to have been based solely on the failure to include the witnesses on the *280 witness list. The error in precluding GMAC from calling witnesses was aggravated by the plaintiff's closing, which argued to the jury that GMAC's failure to call witnesses was tantamount to an admission of wrongdoing.
I concur in the majority's discussion of damages. It seems that GMAC and the dealership could only be jointly and severally liable for damages, since there was only one transaction where the plaintiff was damaged and GMAC could be responsible only for teaching the dealership personnel those tactics it used to convince the plaintiff to lease the car instead of purchasing it. As the majority demonstrates, the plaintiff's formula for damages included elements that exceeded the "actual damages" recoverable under the statute.
NOTES
[1] The lease agreement presented to and signed by appellee clearly was not financially advantageous to him when compared to the sales agreement he had negotiated. Had appellee read the lease thoroughly and performed his own mathematical calculations, instead of relying on the manager's representations, appellee would have known that.
[2] This evidence was in the form of testimony by Mr. David Stivers, appellee's expert, based on his attendance at a training seminar conducted by GMAC three months after the transaction from which this suit arises. The content of Mr. Stivers' reports were not made available to appellant until after the cutoff date set by the court for the parties to exchange lists of witnesses. Appellant's motion to supplement its witness list by adding the names of those persons who would rebut this testimony was denied by the court. That ruling, which is the subject of one of appellant's issues on this appeal, was within the court's discretion, Binger v. King Pest Control, 401 So.2d 1310 (Fla.1981), and no abuse has been shown.
[3] Testimony from Mr. Stivers that tended to support such connection was offered but only outside the presence of the jury.
[4] Appellee testified that he had expected, from the representations made to him, that he would own the car at the end of the lease term. However, he thought he would own the car without further payment, notwithstanding the clear language of the lease which gave him the option to purchase the car at the end of the lease term for $21,195.
[5] Although appellee's expert opined that the car was "over-priced" because appellee agreed to pay "sticker price" when he could have negotiated for a price of $4,000 less, and that the actual "retail" value of appellee's BMW trade-in was $12,200 more than was allowed on the lease, that evidence has no relevance to the issue here. Appellee was agreeable to the terms of the purchase agreement and the $27,000 check he had written to close that deal was torn up by him only after he had been persuaded that a lease was a "better deal". Thus, the measure of appellee's damages caused by the "bait and switch" is the increased cost to him of the lease-purchase as compared with the deal he had in fact made on the outright purchase, not by comparison with the deal he might have made for the outright purchase had he been a more astute negotiator.
[6] This consists of $929 in cash at signing (which included the first month's lease payment and a $375 refundable security deposit), 35 additional lease payments in the total sum of $12,346, and purchase for $21,295 upon termination.
[7] Interest is an important factor. On the purchase appellee would lose the use of $27,000 for 36 months. On the lease appellee would lose the use of the $929 down payment for 36 months, the use of the next lease payment for 35 months, etc. The total would be substantially less than on the outright purchase. The amount obviously depends upon the interest rate used for the computation. Assuming a 6% rate, the benefit to appellee of installment payments over the lump sum payment is approximately $3,600.